**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| David Inouye, individually and on behalf of all others similarly situated,<br>Plaintiff,<br><br>- against -<br><br>Adidas America, Inc.,<br>Defendant | Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. Adidas America, Inc. ("Defendant") manufactures, labels, markets, and sells NHL (National Hockey League) jerseys represented as "authentic" or "authentic pro" under the Adidas brand (the "Product").

2. Defendant promotes the Product as authentic through methods including labeling, hang tags attached to the Product, and descriptions, seen on its website, shown below.




BACK Home / Men / Hockey / Jerseys

MEN'S AUTHENTIC NHL HOCKEY JERSEYS [53]




3. Third-party stores and websites such as fanatics.com, identify the Product as "authentic."




4. Consumers want to buy and wear the jerseys worn by their favorite hockey teams and players.

5. Consumers purchasing NHL jerseys marketed as "authentic," by the company which makes the jerseys worn by NHL teams, will expect they are

purchasing jerseys of identical quality to those worn by NHL players.[1]

6. Authentic is defined as not false or copied, or genuine, as opposed to counterfeit.[2]

7. However, the Product is not authentic and differs in numerous ways from the jerseys worn by NHL players.

8. First, the cut of the jerseys is tighter than those worn by NHL players.

9. Second, the fabric used in the Product is half the thickness of the jerseys worn by NHL players.

10. Third, the stitching used in making the Product is weaker and less durable than in the jerseys worn by NHL players.

[1] AJ Strong, Stop Calling Adidas NHL Jerseys Authentic, Teal Town USA, June 29, 2021.
[2] Dictionary.com, authentic.

Product NHL Jersey



11. Fourth, the neck hole for the jerseys worn by NHL players (top) is smaller than in the Product sold to Plaintiff and consumers (bottom).



12. Fifth, the “dimples” or small holes in the upper torso and shoulder area of the Product (top) are significantly smaller than in the jerseys worn by NHL players (bottom).




13. The dimples are not merely for aesthetics but allow air to flow through the jersey.

14. The smaller dimples of the Product render it less efficient at dealing with moisture and airflow than those worn by NHL players.



15. Sixth, the Product is made in Indonesia, as opposed to those worn by NHL players, which are made in Canada.

16. The Product (middle) is closer to counterfeit Adidas NHL jerseys (bottom) than to those worn by NHL players (top).




17. The representation of the Product as "authentic" is misleading, because they are more accurately described as "replicas."

18. Defendant makes other representations and omissions with respect to the Product which are false or misleading.

19. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

20. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

21. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

22. Had Plaintiff and proposed class members known the truth, they would

not have bought the Product or would have paid less for it.

23. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $179.99, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

24. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

25. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

26. Plaintiff David Inouye is a citizen of Florida.

27. Defendant Adidas America, Inc. is an Oregon corporation with a principal place of business in Portland, Multnomah County, Oregon

28. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen

29. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years, in thousands of locations, in the states covered by Plaintiff's proposed classes.

30. The Product is available to consumers from Defendant's retail stores and website, and third-party retail sporting goods stores and websites

31. Venue is in the Tampa Division in this District because a substantial

part of the events or omissions giving rise to these claims occurred in Hillsborough County, i.e., Plaintiff's purchase, consumption, and/or use of the Product and awareness and/or experiences of and with the issues described here.

Parties

32. Plaintiff David Inouye is a citizen of Gibsonton, Hillsborough County, Florida.

33. Defendant Adidas America, Inc. is a Oregon corporation with a principal place of business in Portland, Oregon, Multnomah County.

34. The parent company of Defendant is Adidas AG, a German multinational sportswear corporation, founded and headquartered in Herzogenaurach, Bavaria, in 1949.

35. Adidas AG is the second largest sportswear company in the world, after Nike, with revenues approaching $30 billion.

36. Adidas manufactures uniforms, including jerseys, for the National Hockey League.

37. Consumers know they can trust a sportswear product with Adidas' well-known three stripes to deliver what it promises.

38. The Product is available to consumers from Defendant's retail stores and website, and third-party retail sporting goods stores and websites

39. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Fanatics, at locations including fanatics.com between November 2021 and December 2021,

and/or among other times.

40. Plaintiff believed the Product was authentic, understood as being genuine and substantially similar or identical to those worn by NHL players.

41. Plaintiff bought the Product because he expected it was authentic, understood as being genuine and substantially similar or identical to those worn by NHL players because that is what the representations said and implied.

42. Plaintiff relied on the words, descriptions, layout, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, and/or claims made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

43. Plaintiff was disappointed because he believed the Product was authentic, understood as being genuine and substantially similar or identical to those worn by NHL players.

44. Plaintiff bought the Product at or exceeding the above-referenced price.

45. Plaintiff would not have purchased the Product if he knew the representations and omissions were false and misleading or would have paid less for it.

46. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

47. The Product was worth less than what Plaintiff paid and he would not

have paid as much absent Defendant's false and misleading statements and omissions.

48. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

49. Plaintiff is unable to rely on the labeling and representations not only of this Product, but for other similar authentic sports jerseys, because he is unsure whether those representations are truthful.

Class Allegations

50. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Florida Class:** All persons in the State of Florida who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the forty-nine other States including the District of Columbia, who purchased the Product during the statutes of limitations for each cause of action alleged.

51. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

52. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

53. Plaintiff is an adequate representative because his interests do not conflict with other members.

54. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

55. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

56. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

57. Plaintiff seeks class-wide injunctive relief because the practices continue.

Florida Deceptive and Unfair Trade Practices Act
("FDUTPA"), Fla. Stat. § 501.201 et seq.

(Consumer Protection Statute)

58. Plaintiff incorporates by reference all preceding paragraphs.

59. Plaintiff and class members desired to purchase a product that was authentic, understood as being genuine and substantially similar or identical to those worn by NHL players.

60. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

61. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

62. Plaintiff relied on the representations that the Product was authentic, understood as being genuine and substantially similar or identical to those worn by NHL players.

63. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

64. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the above-referenced consumer protection statute and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

65. Defendant intended that each of the members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

66. As a result of Defendant's use or employment of artifice, unfair or deceptive acts or business practices, each of the members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

67. Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

Breach of Contract

68. Plaintiff entered into a contract with Defendant for purchase of the

Product.

69. The terms of the contract provided that the Product was authentic, understood as being genuine and substantially similar or identical to those worn by NHL players.

70. Defendant breached the contract because the Product did not meet the terms Plaintiff agreed to.

71. Plaintiff was damaged by the breach, and those damages include the purchase price.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

72. The Product was manufactured, identified, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it was authentic, understood as being genuine and substantially similar or identical to those worn by NHL players.

73. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

74. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

75. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant

the Product was authentic, understood as being genuine and substantially similar or identical to those worn by NHL players.

76. Defendant's representations affirmed and promised that the Product was authentic, understood as being genuine and substantially similar or identical to those worn by NHL players.

77. Defendant described the Product as one which was authentic, understood as being genuine and substantially similar or identical to those worn by NHL players, which became part of the basis of the bargain that the Product would conform to its affirmations and promises.

78. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

79. This duty is based on Defendant's outsized role in the market for this type of Product, the official manufacturer of NHL jerseys, and known as a leader in sportswear.

80. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

81. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

82. Plaintiff hereby provides notice to Defendant that it has breached the express and implied warranties associated with the Product.

83. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and

consumers, to its main offices, and by consumers through online forums.

84. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

85. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label.

86. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it was authentic, understood as being genuine and substantially similar or identical to those worn by NHL players, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

87. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

88. Defendant had a duty to truthfully represent the Product, which it breached.

89. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, the official manufacturer of NHL jerseys, and known as a leader in sportswear.

90. Defendant's representations regarding the Product went beyond the specific representations on the packaging, as they incorporated its extra-labeling

promises and commitments to quality, transparency and putting customers first.

91. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

92. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

93. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

94. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

95. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it was authentic, understood as being genuine and substantially similar or identical to those worn by NHL players.

96. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity or deception, through statement and omission, of the representations.

97. Defendant knew of the issues described here yet did not address them.

98. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

Unjust Enrichment

99. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and
6. Other and further relief as the Court deems just and proper.

Dated: February 21, 2022

Respectfully submitted,

/s/Will Wright
The Wright Law Office, P.A.
Will Wright
515 N Flagler Dr Ste P300
West Palm Beach FL 33401-4326
Tel: (561) 514-0904
willwright@wrightlawoffice.com

Sheehan & Associates, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com

*Pro Hac Vice Application Forthcoming