UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID INOUYE,

     Plaintiff,

v.                                Case No. 8:22-cv-416-VMC-TGW

ADIDAS AMERICA, INC.,

     Defendant.
_____/

**ORDER**

     This matter comes before the Court upon consideration of Defendant Adidas America, Inc.'s Motion to Dismiss Complaint (Doc. # 22), filed on July 5, 2022. Plaintiff David Inouye responded on July 26, 2022. (Doc. # 25). For the reasons set forth below, the Motion is granted to the extent stated herein.

**I.**   **Background**

     This case arises out of the allegedly deceptive product labeling by Adidas America, Inc., of its jerseys as "authentic." (Doc. # 1 at ¶¶ 1-2). Adidas manufactures, labels, markets, and sells National Hockey League ("NHL") jerseys (the "Product"). (Id. at ¶ 1). Adidas promotes the Product as "authentic," representing as such through methods including labeling, hang tags attached to the Product, and

1

descriptions on its website. (Id. at ¶ 2). Third-party stores and websites, including fanatics.com, also identify the Product as "authentic." (Id. at ¶ 3).

Despite Adidas' characterization of the Product as "authentic," the Product differs in numerous ways from the jerseys worn by NHL players. (Id. at ¶ 7). First, the cut of the Product is tighter than that of those worn by NHL players. (Id. at ¶ 8). Second, the fabric used in the Product is half the thickness of the jerseys worn by NHL players. (Id. at ¶ 9). Third, the stitching used in making the Product is weaker and less durable than in the jerseys worn by NHL players. (Id. at ¶ 10). Fourth, the neck hole of the Product is larger than that of the jerseys worn by NHL players. (Id. at ¶ 11). Fifth, the "dimples" in the upper torso and shoulder area of the Product are significantly smaller than those of the jerseys worn by NHL players. (Id. at ¶ 12). The dimples are not merely for aesthetics; rather, they allow air to flow through the jersey. (Id. at ¶ 13). The smaller dimples of the Product thus render it less efficient at dealing with moisture and airflow than the jerseys worn by NHL players. (Id. at ¶ 14). Finally, the Product is made in Indonesia, whereas the jerseys worn by NHL players are made in Canada. (Id. at ¶ 15). The Product is sold at a premium price, no less than

$179.99, which is higher than it would be sold absent the misleading representations and omissions. (Id. at ¶ 23).

David Inouye is a resident of Hillsborough County, Florida. (Id. at ¶ 32). Mr. Inouye purchased the Product on one or more occasions between November and December 2021 at stores including Fanatics and at locations including fanatics.com. (Id. at ¶ 39). Mr. Inouye purchased the Product because of his belief that it was "authentic," which he understood to mean "genuine and substantially similar or identical" to the jerseys worn by NHL players. (Id. at ¶ 40-41). In doing so, Mr. Inouye relied on the words, descriptions, layout, packaging, tags, and images on the Product, on the labeling, statements, omissions, and claims made by Adidas or at its direction in digital, print and social media, which accompanied the Product and separately, and through in-store, digital, audio, and print marketing. (Id. at ¶ 42).

Because of Mr. Inouye's belief that the Product was "authentic," he purchased the Product at prices at or exceeding $179.99. (Id. at ¶¶ 23, 44). He was subsequently disappointed by the Product's lack of authenticity, and would have either not purchased the Product or would have paid less

for it if he knew the representations and omissions were false and misleading. (Id. at ¶¶ 43, 45).

Mr. Inouye filed this class action on February 21, 2022, asserting claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count I), State Consumer Fraud Acts (Count II), the Magnuson-Moss Warranty Act (Count IV), and for Breach of Contract (Count III), for Breaches of Express Warranty and Implied Warranty of Merchantability/Fitness for Particular Purpose (Count IV), Negligent Misrepresentation (Count V), Fraud (Count VI), and Unjust Enrichment (Count VII). (Doc. # 1). In his complaint, Mr. Inouye seeks class certification on behalf of similarly situated customers. (Id. at ¶ 50). On July 5, 2022, Adidas moved to dismiss the complaint (Doc. # 22), and Mr. Inouye responded. (Doc. # 25). The Motion is now ripe for review.

## II.  <u>Legal Standard</u>

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the

complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901
F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6)
> motion to dismiss does not need detailed factual
> allegations, a plaintiff's obligation to provide
> the grounds of his entitlement to relief requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action
> will not do. Factual allegations must be enough to
> raise a right to relief above the speculative
> level.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal
citations omitted). Courts are not "bound to accept as true
a legal conclusion couched as a factual allegation." <u>Papasan
v. Allain</u>, 478 U.S. 265, 286 (1986). The Court must limit its
consideration to well-pleaded factual allegations, documents
central to or referenced in the complaint, and matters
judicially noticed. <u>La Grasta v. First Union Sec., Inc.</u>, 358
F.3d 840, 845 (11th Cir. 2004).

The Federal Rules of Civil Procedure accord a heightened
pleading standard to claims for fraud, requiring that they be
pled with particularity. Fed. R. Civ. P. 9(b). Under Rule
9(b), the "plaintiff must allege: (1) the precise statements,
documents, or misrepresentations made; (2) the time, place,
and person responsible for the statement; (3) the content and
manner in which these statements misled the [p]laintiffs; and
(4) what the defendants gained by the alleged fraud." <u>Am.</u>

Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997)). This "requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." W. Coast Roofing and Waterproofing, Inc. v. Johns Manville, Inc., 287 F. App'x 81, 86 (11th Cir. 2008) (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)).

**III. Analysis**

Adidas seeks to dismiss all counts of the complaint. (Doc. # 22). The Court will address each claim in turn.

**A.   Florida Deceptive and Unfair Trade Practices Act (Count I)**

Adidas asserts that Mr. Inouye's FDUPTA claim should be dismissed because Mr. Inouye has failed to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). (Doc. # 22 at 5). Mr. Inouye contends that Rule 9(b) does not apply to FDUPTA claims and that he has plead his claim with sufficient particularity. (Doc. # 25 at 3).

To establish a cause of action under FDUTPA, a plaintiff must sufficiently allege the following three elements: "(1)

6

a deceptive act or unfair practice; (2) causation; and (3) actual damages." Kertesz v. Net Transactions, Ltd., 635 F. Supp. 2d 1339, 1348 (S.D. Fla. 2009) (quoting City First Mortg. Corp. v. Barton, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)). "A deceptive practice is one that is likely to mislead consumers, and an unfair practice is one that 'offends established public policy' or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" Bookworld Trade, Inc. v. Daughters of St. Paul, Inc., 532 F. Supp. 2d 1350, 1364 (M.D. Fla. 2007) (quoting Rollins, Inc. v. Butland, 951 So.2d 860, 869 (Fla. 2d DCA 2006)).

Courts in this district are split as to whether a claim for relief under FDUTPA must also meet Rule 9(b)'s heightened pleading standard. Compare Allstate Ins. Co. v. Auto Glass Am., LLC, 418 F. Supp. 3d 1009, 1021-22 (M.D. Fla. 2019) ("As a threshold matter, this Court declines to impose the heightened pleading standard set forth in Rule 9(b)[.]") with Blair v. Wachovia Mortg. Corp., No. 5:11-cv-566-RBD-TBS, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012) ("[T]his Court concludes that where the gravamen of the [FDUTPA] claim sounds in fraud, as here, the heightened pleading standard of Rule 9(b) would apply.").

The trend has been for courts to apply the Rule 9(b) standard when FDUTPA claims sound in fraud. See, e.g., Hummel v. Tamko Bldg. Prods., No. 6:15-cv-910-PGB-GJK, 2015 WL 12843907, at *2-3 (M.D. Fla. Nov. 6, 2015) (finding that the plaintiff's FDUTPA claim had to be pled with particularity because it was primarily based on allegations sounding in fraud); Casey v. Fla. Coastal Sch. of Law, Inc., No. 3:14-cv-1229-BDJ-PDB, 2015 WL 10096084, at *10 (M.D. Fla. Aug. 11, 2015), report and recommendation adopted, No. 3:14-cv-1229-BDJ-PDB, 2015 WL 10818746 (M.D. Fla. Sept. 29, 2015) (recognizing this trend); Altamonte Pediatric Assocs. v. P.A. Greenway Health, LLC, No. 8:20-cv-604-VMC-JSS, 2020 WL 5350303, at *4 (M.D. Fla. Sept. 4, 2020) (applying the heightened Rule 9(b) pleading standard to a FDUPTA claim). "Absent an allegation of fraudulent conduct," however, courts typically do not apply the heightened pleading requirement. Total Containment Sols., Inc. v. Glacier Energy Servs., No. 2:15-cv-63-SPC-CM, 2015 WL 3562622, at *2 (M.D. Fla. June 5, 2015).

Here, Mr. Inouye alleges that Adidas' "false and deceptive representations" of the product as "authentic" constitute an unfair and deceptive act and practice that misled Mr. Inouye and other consumers to purchase the product

at an inflated price. (Doc. # 1 at ¶¶ 59-60, 62-63). Although Count I of Mr. Inouye's complaint does not specifically allege actual damages, it notes that "Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages." (Id. at ¶ 63).

Given the above allegations of the complaint, Mr. Inouye's FDUPTA claim sounds in fraud as it avers false or misleading "statements, omissions, ambiguities, half-truths, and/or actions." (Id. at ¶ 61). Therefore, Rule 9(b)'s heightened pleading standard applies. See PB Prop. Mgmt., Inc. v. Goodman Mfg. Co., No. 3:12-cv-1366-HES-JBT, 2013 WL 12172912, at *6 (M.D. Fla. Aug. 28, 2013) ("[T]he Middle District of Florida has consistently held that those FDUTPA claims that hinge on allegations of misrepresentation are 'grounded in fraud' and are therefore governed by Rule 9(b)'s heightened pleading requirements.").

Again, Rule 9(b) requires a plaintiff to allege the "who, what, when, where, and how" of misconduct. Garfield v. NDS Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006) (quotations omitted). Courts in this district have found FDUPTA claims insufficiently pled under Rule 9(b) where the complaint does not explain when the plaintiff viewed the alleged misrepresentations. PB Prop. Mgmt., 2013 WL 12172912, at *7.

For example, in PB Property Management, plaintiff sued under FDUPTA, claiming that defendants made misrepresentations concerning an allegedly defective product on both their website and in a press release. Id. at *1.   The court dismissed the FDUPTA claim, reasoning that plaintiff's failure to allege "when Plaintiff viewed the alleged misrepresentations on Defendants' website, or even whether it — or any other consumer — viewed them at all before purchasing the allegedly defective products" did not satisfy the pleading requirements of Rule 9(b). Id. at *7.

Similarly, the district court in Jackson v. Anheuser-Busch InBev SA/NV, LLC, No. 20-cv-23392-BLOOM/Louis, 2021 WL 3666312 (S.D. Fla. Aug. 18, 2021), found that allegations of misleading statements on a defendant's website did not meet the heightened Rule 9(b) pleading requirement. There, the court evaluated allegedly misleading statements by a brewery concerning whether it was a "craft" brewery. Id. at *1-2. Citing to PB Property Management, the court found that because plaintiff failed to allege when or whether misstatements on product labels or the defendant's website were viewed, plaintiff had failed to provide "detailed and particularized facts" concerning the fraud claim. Id. at *13.

Here, the allegedly false and deceptive misrepresentation at issue is Adidas' characterization of the Product as "authentic." (Doc. # 1 at ¶ 59). Mr. Inouye states that Adidas "promotes the Product as authentic through methods including labeling, hang tags attached to the Product, and descriptions, seen on its website, shown below." (Doc. # 1 at ¶ 2). Mr. Inouye similarly contends that "[t]hird-party stores and websites such as fanatics.com, identify the Product as 'authentic.'" (Id. at ¶ 3).

However, like in PB Property Management and Jackson, Mr. Inouye does not state when he viewed the alleged misrepresentations on either Adidas' or the third parties' websites. See PB Prop. Mgmt., 2013 WL 12172912, at *7 (finding the plaintiff failed to plead the complaint with particularity where it did not allege whether it viewed the misrepresentations before purchasing the product); Jackson, 2021 WL 2666312, at *13 (same). While Mr. Inouye's allegation that he "would not have purchased the Product or paid as much if the true facts had been known" implies that he viewed the allegedly misrepresentative statements before purchasing the Product, he does not indicate whether he did so on Adidas' website, the Fanatics website, or on the product labels. (Doc. # 1 at ¶ 45). Indeed, because Mr. Inouye alleges that he

purchased the product from Fanatics, rather than directly from Adidas, the Court is unable to discern whether he viewed the alleged misrepresentations on Adidas' website at all before purchasing the product. See (Doc. # 1 at ¶ 39) (describing Mr. Inouye's purchase of the product from "stores including Fanatics"). Likewise, while Mr. Inouye alleges that he purchased the product at various times during November through December 2021, he does not indicate when he viewed the allegedly deceptive product labels or whether he viewed the labels at all prior to purchase. (Id.). Although Mr. Inouye indicates when he *purchased* the product, he does not indicate when he *viewed* the alleged representation. (Id. at ¶ 39).

Importantly, because of this, Mr. Inouye has not sufficiently plead the "causation" element of his FDUPTA claim. While Mr. Inouye alleges that the misleading statements induced him to purchase the product, he does not allege with particularity that he was induced by the misleading statements of Adidas. Put differently, Mr. Inouye has failed to allege "whether [he] viewed [the alleged misrepresentations] at all before purchasing the allegedly defective products." PB Prop. Mgmt., 2013 WL 12172912, at *7. Without alleging that he viewed misrepresentations

attributable to Adidas – whether on the Adidas website, or through product labeling on third-party websites – Mr. Inouye cannot support a claim under the FDUPTA.

Therefore, Adidas' Motion is granted with respect to Count I, which is dismissed without prejudice. See <u>Fidelity Nat'l Fin., Inc. v. Attachmate Corp.</u>, No. 3:15-cv-1400-HES-PDB, 2017 WL 3726687, at *4 (M.D. Fla. Mar. 1, 2017) (dismissing a FDUTPA claim that was not pled with particularity); <u>Hummel</u>, 2015 WL 12843907 at *3 (dismissing FDUPTA claim without prejudice).

## B.    <u>Violation of State Consumer Fraud Acts (Count II)</u>

Adidas contends that Mr. Inouye's claim for violation of state consumer fraud acts, on behalf of the "consumer fraud multi-state class," should be dismissed because Mr. Inouye has failed to identify "the specific claims, provisions, or theories of liability he purports to invoke under each jurisdiction's laws[.]" (Doc. # 22 at 11). Mr. Inouye argues that each state consumer fraud statute on which he intends to rely is similar to FDUPTA. (Doc. # 25 at 12–13). Further, while Adidas does not raise this argument, Mr. Inouye preemptively argues that he has standing to pursue non-Florida claims, asserting that the "prudent option" is to

defer the issue of potential class members' standing until the class certification stage. (Id. at 14).

The Court need not address Adidas' argument because it sua sponte finds that Mr. Inouye lacks Article III standing to assert claims under non-Florida consumer protection statutes. See United States v. Hays, 515 U.S. 737, 742 (1995) ("The question of standing is not subject to waiver . . . . The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines." (internal quotations omitted)); see also Valiente v. Unilever U.S., No. 22-21507-CIV-LENARD/Louis, 2022 WL 18587887, at *8–9 (S.D. Fla. Dec. 8, 2022) (finding a plaintiff who brought a cause of action for violation of state consumer fraud acts, on behalf of the consumer fraud multi-state class, lacked Article III standing).

"A plaintiff's standing to bring and maintain her lawsuit is a fundamental component of a federal court's subject matter jurisdiction." Baez v. LTD Fin. Servs., L.P., No. 6:15-cv-1043-PGB-DCI, 2016 WL 3189133, at *2 (M.D. Fla. June 8, 2016) (citing Clapper v. Amnesty Int'l USA, 568 U.S. 398 (2013)). The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to

14

seek redress for a legal wrong." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).

To establish standing, "[t]he plaintiff must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. "'The party invoking federal jurisdiction bears the burden of establishing' standing." Clapper, 568 U.S. at 411–12 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)).

Further, in the class action context, the "individual injury requirement is not met by alleging that injury has been suffered by other, unidentified members of the class to which [the plaintiff] belong[s] and which [he] purport[s] to represent." Griffin v. Duggar, 823 F.2d 1476, 1483 (11th Cir. 1987) (citing Warth v. Seldin, 422 U.S. 490, 502 (1975)). "Thus, a plaintiff cannot include class action allegations in a complaint and expect to be relieved of personally meeting the requirements of constitutional standing, even if the persons described in the class definition would have standing themselves to sue." Id. (internal quotations omitted).

Courts have found Article III standing lacking where, at the motion to dismiss stage, a plaintiff brings claims under various state statutes on behalf of unnamed, putative

plaintiffs. For example, in <u>Valiente</u>, the district court evaluated a cause of action entitled "Violation of State Consumer Fraud Acts (On Behalf of the Consumer Fraud Multi-State Class)," brought by a single named plaintiff. <u>Id.</u> at *8. The court rejected the plaintiff's argument that the court should defer ruling on the issue of standing until class certification, reasoning that "there must be a named plaintiff with constitutional standing to assert each particular claim[.]" <u>Id.</u> at *9 (citing <u>In re Checking Acct. Overdraft Litig.</u>, 694 F. Supp. 2d 1302, 1324 (S.D. Fla. 2010)).

Similarly, in <u>In re Checking Account</u>, a multidistrict litigation case involving alleged violations of consumer protection statutes in several different states, the court dismissed a claim under a state statute where no named plaintiff resided in that state. <u>In re Checking Acct. Overdraft Litig.</u>, 694 F. Supp. 2d at 1324. There, the court rejected plaintiffs' argument that <u>Griffin</u> applies only where the named plaintiff did not suffer from the factual circumstances that would be required to assert a particular claim. <u>Id.</u> Declining to defer ruling on the issue until class certification, the court concluded that plaintiffs "may only

assert a state statutory claim if a named plaintiff resides in that state." Id. at 1325.

Here, like in Valiente, Mr. Inouye is the only named plaintiff in this action. See Valiente, 2022 WL 18587887, at *9 (finding no Article III standing). Mr. Inouye purports to bring claims under non-Florida state statutes on behalf of the "Consumer Fraud Multi-State Class." (Doc. # 1 at 14). Because Mr. Inouye neither resides in nor alleges that he purchased the Product within those states, he lacks standing to assert claims under those statutes. Although Mr. Inouye argues that the contours of his claim are substantially similar to those of the putative class members, that alone is insufficient to establish standing. See In re Checking Acct. Overdraft Litig., 694 F. Supp. 2d at 1324–25 (rejecting plaintiffs' arguments that they had standing to assert claims under other states' statutes because they suffered the same factual harm). Thus, because Mr. Inouye does not have standing to assert claims on behalf of future, hypothetical plaintiffs, his state statutory claims based on the law of states in which he does not reside are dismissed without prejudice. See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008)

("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice.").

### C.   **Breach of Contract (Count III)**

Adidas contends that Mr. Inouye's breach of contract claim should be dismissed because Mr. Inouye has not sufficiently alleged that he had a contract with Adidas. (Doc. # 22 at 12). In his response, Mr. Inouye states that he withdraws his breach of contract claim. (Doc. # 25 at 1 n.1). Accordingly, the Court dismisses without prejudice Count III of the complaint. See GlobalOptions Servs., Inc. v. N. Am. Training Grp., Inc., 131 F. Supp. 3d 1291, 1302 n.5 (M.D. Fla. 2015) (dismissing a claim without prejudice where Plaintiff voluntarily withdrew the claim but did not specify whether the withdrawal was with or without prejudice).

### D.   **Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose, and Magnuson-Moss Warranty Act (Count IV)**

While Mr. Inouye apparently combined all of his warranty claims into one single count, the Court will first address his state law claims, for breaches of express and implied warranties, before addressing his claim under the Magnuson-Moss Warranty Act. (Doc. # 1 at ¶¶ 72-87).

### 1.   __Express and Implied Warranty Claims__

Adidas makes several arguments for why the Court should dismiss Mr. Inouye's warranty claims: (1) Mr. Inouye has failed to allege facts showing he was in privity with Adidas; (2) Mr. Inouye has not identified any express warranty that was breached; and (3) Mr. Inouye has not alleged facts supporting his implied warranty claims. (Doc. # 22 at 13-18). In response, Mr. Inouye contends that the "substantial direct contact" exception to the privity requirement applies and that he has adequately pled his breach of warranty claims. (Doc. # 25 at 11-12).

The Court begins with Adidas' argument that Mr. Inouye has not pled he was in privity with Adidas. In Florida, warranty-based claims require privity of contract between the parties. See Kaiser v. Depuy Spine, Inc., 944 F. Supp. 2d 1187, 1193 (M.D Fla. 2013) ("It is well established law in Florida that warranty-based claims, including breach of express warranty, require privity of contract between the parties."); Ocana v. Ford Motor Co., 992 So. 2d 319, 325 (Fla. 3d DCA 2008) ("Under Florida law, privity of contract is required to maintain an action for breach of an implied warranty."). However, a plaintiff who purchased a product from a third party may properly bring claims for a breach of

warranty against the manufacturer if "substantial direct contacts" existed between the plaintiff and the manufacturer. Douse v. Boston Sci. Corp., 314 F. Supp. 3d 1251, 1262 (M.D. Fla. 2018).

Here, Mr. Inouye does not contend he was in privity with Adidas; rather, he asserts that Adidas' promotion of the product as authentic on its website and through third-party stores and websites satisfies the "substantial direct contact" exception to the privity requirement. (Doc. # 25 at 11). As an initial matter, beyond stating that the exception applies, Mr. Inouye does not provide any support for his contention that Adidas' online promotion of the products satisfies the exception. (Id. at 11). For its part, Adidas contends that its "untargeted marketing" is insufficient to fulfill the exception. (Doc. # 22 at 13).

Courts confronting the issue of whether product labeling is sufficient to establish "substantial direct contacts" have reached differing conclusions. For example, a federal district court has held that the mere presence of misleading statements on product labels is sufficient to establish "substantial direct contacts," even where the plaintiff did not purchase the product directly from the manufacturer. Smith v. Wm. Wrigley Jr. Co., 663 F. Supp. 3d 1336, 1343 (S.D.

20

Fla. 2009). There, the plaintiff sued a chewing gum manufacturer for breach of express warranty based on allegedly misleading statements in the gum label's wrapper. Id. at 1337–38. The court reasoned that, unlike in a situation where the "end-purchaser might expect the seller or 'middle-man' to have relevant knowledge" regarding the product, "it defies common sense to argue that purchasers of Eclipse gum presumed the cashier at the local convenience store" has sufficient knowledge to contradict the statements on the wrapper. Id. at 1343.

Conversely, a Florida appeals court found a hospital had a cognizable claim for breach of implied warranty against a manufacturer where it purchased a defective x-ray machine through a third-party seller. Cedars of Lebanon Hosp. Corp. v. European X-Ray Distrib. of Am., Inc., 444 So. 2d 1068, 1069, 1072 (Fla. 3d DCA 1984). There, the court found that, even though the hospital purchased the machine from a third-party, the manufacturer's "direct representations" to the hospital established substantial direct contacts. Id. at 1072. However, the court noted that privity would not exist "[h]ad there been no *direct contact* between the two parties[.]" Id. at 1072 n.4 (emphasis added).

Likewise, a court in this district has found product labeling insufficient to establish the substantial direct contacts exception. Douse, 314 F. Supp. 3d at 1262. There, the plaintiff sued a manufacturer for breaches of express and implied warranties based on an allegedly defective medical device. Id. at 1257. Noting the apparent conflict between Smith and Cedars, the court reasoned that "extending warranty liability to include product label representations would swallow the privity rule entirely." Id. at 1262. Specifically, the court noted that only "personal contact between the consumer and manufacturer" satisfied the interests of privity. Id.

Here, this Court finds that Mr. Inouye's allegations are insufficient to establish the "substantial direct contacts" exception. Unlike in Cedars, Mr. Inouye does not allege that there was any "direct contact" between himself and Adidas. See Cedars, 444 So. 2d at 1072 n.4 (noting a lack of direct contact between the purchaser and manufacturer would change the "substantial direct contacts" analysis). Rather, Mr. Inouye alleges that Adidas "directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital

advertising." (Doc. # 1 at ¶ 73). According to Mr. Inouye, Adidas "developed its marketing and labeling to directly meet [the] needs and desires" of potential customers. (Id. at ¶ 74).

The Court agrees with Adidas that these allegations of "untargeted marketing" are insufficient to establish "substantial direct contacts." See Douse, 314 F. Supp. 3d at 1262 (noting "untargeted marketing cannot surmount Florida's privity requirement" for warranty claims). First, the Court is persuaded by the weight of authority indicating that such labeling and advertising does not satisfy the "substantial direct contacts" exception. See Id. (holding product label representations are insufficient to establish the exception); Anderson v. Johnson, No. 6:20-cv-2393-WWB-GJK, 2021 WL 3622397, at *7 (M.D. Fla. Aug. 16, 2021) (finding representations provided in a product's "Instructions for Use, pamphlets, and commercial documents" insufficient to establish the exception), report and recommendation adopted sub nom. Anderson v. Johnson & Johnson, No. 6:20-CV-2393-WWB-GJK, 2021 WL 5121861 (M.D. Fla. Nov. 4, 2021).

Second, the Court finds the reasoning in Smith inapplicable here. The court in Smith reasoned that while a purchaser would not reasonably rely on a convenience store

cashier to contract statements on a product label, in certain situations, "the end-purchaser might expect the seller or 'middle man' to have relevant knowledge . . . regarding the manufacturer's product." Smith, 663 F. Supp. 2d at 1343. In a situation like Mr. Inouye's, a purchaser would likely expect a third-party reseller of apparel to convey accurate information concerning the product specifications. Unlike a convenience store cashier vis-à-vis the technical information contained on a product label, a retail reseller is in a better position to contradict allegedly misleading product labelling on an athletic jersey. See Douse, 314 F. Supp. at 1262 (explaining that the plaintiff in Smith "could not have reasonably relied on a convenience store cashier to contradict the statements" on a product label). Therefore, Mr. Inouye's purchase of the product from third-party resellers is insufficient to establish the "substantial direct contacts" exception.

Because the Court has found that there is no privity between Mr. Inouye and Adidas, and that the "substantial direct contacts" exception does not apply, Mr. Inouye has not stated a cognizable claim for a breach of either express or implied warranty. As Mr. Inouye's claims fail on that ground, the Court need not address Adidas' additional arguments. Mr.

Inouye's warranty claims are due to be dismissed without prejudice.

### 2.   **Magnuson-Moss Warranty Act**

Next, Adidas contends that Mr. Inouye's Magnuson-Moss Warranty Act (MMWA) claim should be dismissed because Mr. Inouye has not sufficiently pled viable state-law warranty claims, and because the Court lacks jurisdiction to hear the claim. (Doc. # 22 at 19–20). Mr. Inouye asserts that his state-law warranty claims are cognizable, thus supporting his MMWA claim. (Doc. # 25 at 12). Mr. Inouye also argues that Adidas' jurisdictional argument is misplaced, because he sought this Court's jurisdiction based on the Class Action Fairness Act (CAFA), not the MMWA.

"While the MMWA, (15 U.S.C. § 2301(7)), gives consumers a private right of action against warrantors for breach of implied warranty, implied warranty claims under the MMWA arise out of and are defined by state law." Bailey v. Monaco Coach Corp., 168 F. App'x 893, 894 n.1 (11th Cir. 2006); see 15 U.S.C. ¶ 2301(7) ("The term "implied warranty" means an implied warranty *arising under State law* (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product." (emphasis added)). Thus, for a plaintiff to bring a claim pursuant the

MMWA, he or she must properly allege a "sustainable [state law] claim for breach of warranty." <u>Hunter v. Marlow Yachts, Ltd., Inc.</u>, No. 8:09-CV-1772-TBM, 2011 WL 3794674, at *7 (M.D. Fla. Aug. 26, 2011). Here, because the Court has determined that Mr. Inouye cannot sustain his state-law warranty claims, he similarly cannot properly allege a violation of the MMWA.

Regardless, even if Mr. Inouye's state-law warranty claims were cognizable, his MMWA claim nevertheless fails for lack of jurisdiction. The MMWA allows plaintiffs to bring suit "in an appropriate district court of the United States, subject to paragraph (3) of this subsection." 15 U.S.C. § 2301(d)(1). Paragraph 3 provides that "[n]o claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection – if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." <u>Id.</u> § 2310(d)(1)(3)(c). Adidas argues that because Mr. Inouye is the only named plaintiff in the instant case, the Court does not have jurisdiction over his MMWA claim.

Mr. Inouye contends that Adidas' argument is misplaced, because Mr. Inouye sought jurisdiction based on CAFA, not MMWA. (Doc. # 25 at 12). However, confronting the precise question at issue, the district court in <u>Lewis v. Mercedes-Benz USA, LLC</u>, 530 F. Supp. 3d 1183 (S.D. Fla. 2021), declined

to construe CAFA to provide jurisdiction over a plaintiff's MMWA claims. There, like Mr. Inouye, the plaintiff argued that "CAFA supersedes the MMWA's jurisdictional requirements[.]" Id. at 1206 (internal quotations omitted). While the court acknowledged that the Eleventh Circuit has yet to assess the interplay between CAFA and MMWA's numerosity requirements, it ultimately disagreed with plaintiff, finding that the plain text of the MMWA made the 100-named-plaintiff-limitation clear. Id. at 1206–07.

This Court is persuaded by the Lewis court's reading of the statute. As the Lewis court noted, "[c]onstruing CAFA to provide jurisdiction over MMWA claims despite Plaintiffs' failure to satisfy the plain-language requirement of at least one hundred named plaintiffs would have the effect of overriding a part of the MMWA." Id. at 1207 (citing Floyd v. Am. Honda Motor Co., 966 F.3d 1027, 1034 –35); see also Jackson v. Anheuser-Busch InBev SA/NV, LLC, No. 20-cv-23392-BLOOM/Louis, 2021 WL 3666312 (S.D. Fla. Aug. 18, 2021) (agreeing with the reasoning set forth by the Lewis court and finding no jurisdiction where there were only two named plaintiffs). Because Mr. Inouye is the only named plaintiff in this action, the Court lacks jurisdiction over his MMWA claims.

Because Mr. Inouye has not asserted cognizable state-law warranty claims, Mr. Inouye's MMWA claim is dismissed. For the same reason as Mr. Inouye's state-law claims, the MMWA claim is dismissed with prejudice. Even if there were cognizable state-law warranty claims, the MMWA claim would alternatively be subject to dismissal because Mr. Inouye has failed to fulfill the 100-named-plaintiff requirement of the MMWA.

### E.   <u>Negligent Misrepresentation (Count V)</u>

Adidas asserts that Mr. Inouye's negligent misrepresentation claim should be dismissed because he has not pled the claim with sufficient particularity under Rule 9(b). (Doc. # 22 at 4). Mr. Inouye contends he has sufficiently established the "who, what, when, where, and how" of the alleged misrepresentation. (Doc. # 25 at 13).

To state a claim for negligent misrepresentation in Florida, a plaintiff must allege: (1) a misrepresentation of a material fact; (2) that the defendant made the representation without knowledge as to its truth or falsity, or under circumstances in which he ought to have known of its falsity; (3) that the defendant intended that the misrepresentation induce another to act on it; (4) injury must result to the party acting in justifiable reliance on

28

the misrepresentation. <u>Souran v. Travelers Ins. Co.</u>, 982 F.2d 1497, 1503 (11th Cir. 1993). As a fraud-based claim, Mr. Inouye's negligent misrepresentation claim is also subject to the heightened pleading requirement of Rule 9(b). <u>Lamm v. State St. Bank & Tr.</u>, 749 F.3d 938, 951 (11th Cir. 2014).

Mr. Inouye's claim for negligent misrepresentation relies upon the notion that Adidas held itself out "as having special knowledge and experience in this area" and thus had a duty to "truthfully represent the Product." (Doc. # 1 at ¶¶ 88–89).

Like with Mr. Inouye's FDUPTA claim, the claim for negligent misrepresentation fails to specify when – or whether – Mr. Inouye viewed Adidas' website, or representations on product labels, prior to purchasing the product. Mr. Inouye only states that he purchased the product from third-party locations between November and December 2021. (Doc. # 1 at ¶ 39). As explained in relation to Mr. Inouye's FDUPTA claim, he has failed to plead his claim for negligent misrepresentation with particularity because his complaint "fails to allege with specificity the time at which [the misrepresentations] occurred." <u>PB Prop. Mgmt.</u>, 2013 WL 12172912, at *7. In short, Mr. Inouye's complaint fails to connect the allegedly misleading statements — the

characterization of the jerseys as "authentic" — to Adidas. Thus, he has failed to plead with sufficient particularity that he acted in "justifiable reliance" on Adidas' alleged misrepresentation.

Therefore, Adidas' Motion is granted with respect to Count V, which is dismissed without prejudice.

**F.    Fraud (Count VI)**

Adidas next contends the claim for common-law fraud should be dismissed because Mr. Inouye has failed to plead it with sufficient particularity. (Doc. # 22 at 4). Mr. Inouye asserts he has sufficiently established the "who, what, when, where, and how" of the alleged fraud. (Doc. # 25 at 13).

To plead fraud under Florida law, a plaintiff must allege: (1) the defendant made a false statement regarding a material fact; (2) the defendant knew or should have known the statement was false when he made it; (3) the defendant made the false statement with an intention that the plaintiff rely and act on it; (4) an injury resulted to the plaintiff who acted in justifiable reliance on the false statement. Collins v. Countrywide Home Loans, Inc., 680 F. Supp. 2d 1287, 1292-93 (M.D. Fla. 2010) (citing Simon v. Celebration Co., 883 So. 2d 826, 832 (Fla. 5th DCA 2004)).

Just as Mr. Inouye's FDUPTA and negligent misrepresentation claims fail for lack of causation, so too must his fraud claim. As the Court has explained, Mr. Inouye does not allege when, or whether, he viewed the alleged misrepresentations prior to purchasing the product. Thus, he has not satisfactorily pleaded that he acted in "justifiable reliance" on the alleged misrepresentation in purchasing the product.

Therefore, Adidas' Motion is granted with respect to Count VI, which is dismissed without prejudice.

### G.   Unjust Enrichment (Count VII)

Adidas argues Mr. Inouye's unjust enrichment claim should be dismissed because Mr. Inouye has not sufficiently alleged that he conferred a direct benefit on Adidas. (Doc. # 22 at 20).

To bring an unjust enrichment claim under Florida law, a plaintiff must allege that: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained the benefit; and (3) it would be inequitable for the defendant to retain the benefit without paying the value of the benefit to the plaintiff. Johnson v. Catamaran Health Sols., LLC, 687 F. App'x 825, 830 (11th Cir. 2017) (citing Fito v. Att'ys' Title Ins. Fund, Inc., 83 So.

3d 755, 758 (Fla. 3d DCA 2011)). Further, the benefit conferred on the defendant must be a direct benefit. Kopel v. Kopel, 229 So. 2d 3d 812, 816 (Fla. 2017).

For example, in Extraordinary Title Services, LLC v. Florida Power & Light Co., 1 So. 3d 400 (Fla. 3d DCA 2009), the court held the plaintiff did not confer a direct benefit on the defendant where the plaintiff paid a third-party intermediary for services, who in turn paid the defendant. Noting that it would be the third party, not the plaintiff, that would confer any benefit on the defendant, the court found the plaintiff failed to state a claim for unjust enrichment. Id. at 404. Likewise, in Johnson, the Eleventh Circuit found the plaintiff's payments to a third-party similarly insufficient to confer a benefit on the defendant, even where the intermediary remitted a portion of the payments to the defendant. Johnson, 687 F. App'x at 830.

Here, the only allegation in Mr. Inouye's claim for unjust enrichment is that "Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits." (Doc. # 1 at ¶ 99). Mr. Inouye also alleges, earlier in the complaint, that "Defendant sold

32

more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers." (<u>Id.</u> at ¶ 21).

Notably, Mr. Inouye does not allege that he purchased the product from Adidas; rather, he alleges that he did so from third-party vendors such as Fanatics. (<u>Id.</u> at ¶ 39). At no point in the complaint does Mr. Inouye detail how his purchases from Fanatics – and other unnamed third-party vendors – directly benefitted Adidas. Even assuming that Fanatics paid a portion of its revenues to Adidas, this would, like in <u>Johnson</u> and <u>Florida Power</u>, indicate an indirect benefit "at best." See <u>Johnson</u>, 687 F. App'x at 830 (finding a purchase from a third-party who then, in turn, pays premiums to the defendant insufficient to establish a direct benefit conferred on the defendant); <u>Florida Power</u>, 1 So. 3d at 404 (same). Mr. Inouye has thus failed to show that he conferred a direct benefit on Adidas.

Because Mr. Inouye cannot establish that he conferred a direct benefit on Adidas, his unjust enrichment claim is due to be dismissed with prejudice. See <u>Silberman v. Miami Dade Transit</u>, 927 F.3d 1123, 1133 (11th Cir. 2019) (explaining that while leave to amend ought generally to be freely

granted, leave to amend need not be granted when any amendment would be futile).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Defendant Adidas America, Inc's Motion to Dismiss (Doc. # 22) is **GRANTED.**

(2)  Counts I, II, III, IV, V, and VI are **DISMISSED** without prejudice.

(3)  Count VII is **DISMISSED** with prejudice.

(4)  Plaintiff David Inouye may file an amended complaint within 14 days from the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 3rd day of March, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE